# UNITED STATES *v.* ANDREWS, EXECUTRIX.

No. 48. Argued December 8, 9, 1937.—Decided January 3, 1938.

*Mr. Norman D. Keller,* with whom *Solicitor General Reed, Assistant Attorney General Morris,* and *Messrs. Sewall Key* and *Edward J. Ennis* were on the brief, for the United States.

*Mr. Fred R. Seibert* for respondent.

By leave of Court, *Mr. Percy W. Phillips* filed a brief as *amicus curiae,* in support of respondent.

MR. JUSTICE ROBERTS delivered the opinion of the Court.

In this case we are called upon to determine whether a claim for refund of income tax, asking repayment of a definite sum upon a specific ground, is susceptible of untimely amendment to recover a greater sum on a new and unrelated ground.

The respondent, on behalf of the estate she represented, paid the income tax shown to be due by her return, which exhibited an item of gross income of $110,891 as "dividends from domestic corporations." Of this total $36,750 was erroneously reported as dividends from the M. A. Hanna Company. This amount was paid her pursuant to a recapitalization of the company in which the estate owned preferred stock and, instead of being returned as a dividend, should have been treated as giving rise to a capital gain of $7,411.50.

In December 1931 the respondent was advised by an Internal Revenue agent that her return, reporting the receipt as a dividend, was considered correct, subject to the approval of the Bureau in Washington, and that if later information should indicate a material change in the amount of tax the statutes would require a redetermination of tax liability. October 6, 1932, as a result of conferences with representatives of the Hanna Company, the Commissioner of Internal Revenue advised the

Agent in Charge at Cleveland, Ohio, that the cash received by preferred stockholders in the recapitalization of the company represented proceeds from a sale and that gain or loss therefrom should be determined upon the basis of the cost of the original stock. The respondent was not notified of the ruling until August 22, 1934.

February 1, 1933, respondent filed a claim for the refund of $995.52, based upon an alleged loss in the taxable year due to the worthlessness of stocks of two corporations. Consideration and action thereon were delayed pending the outcome of litigation which would affect the soundness of the claim. In 1936 this claim was rejected in part but allowed to the extent of $160, which was refunded.

June 29, 1934, after expiration of the statutory period for filing refund claims,[1] the respondent presented a claim for $6,454.09 in which she stated that it was "filed as an amendment and amplification of claim for refund filed February 1, 1933" and asserted that the sum of $36,750 reported as a dividend was not such but represented the proceeds of sale of stock of the Hanna Company at a profit of $7,411.50 and that the error in the return resulted in an overpayment of $6,454.09.

November 2, 1935, the Commissioner advised the respondent that, while an overpayment had been made, a refund would be denied because the claim of June 1934 was wholly unrelated to that of February 1, 1933, being an independent demand based upon an entirely different ground. Pursuant to the Commissioner's holding that the latter claim was not filed within the period prescribed by law and, therefore, could not be allowed, official notice of rejection was mailed December 16, 1935. The respondent brought suit in the Court of Claims which gave judgment for her in the amount of $5,536.97.[2]

---

[1] Revenue Act of 1928, c. 852, § 322 (b) (1), 45 Stat. 791, 861.
[2] 84 Ct. Cls. 460; 17 F. Supp. 980.

Upon petitioner's representation that the decision is in conflict with decisions of this court and of two circuit courts of appeals we granted the writ of certiorari. We hold that the so-called amendment was in fact a new claim and its allowance was barred by the statutory provision limiting the time for presentation of claims for refund.

Notwithstanding the reliance of each of the parties on recent decisions of this court none of them rules the precise question now presented. They point the way, however, to a correct decision.

In *United States* v. *Memphis Cotton Oil Co.,* 288 U. S. 62, the claim merely stated that there had been an erroneous overpayment the amount of which was shown by stating the taxpayer's true net income, the tax due thereon, and the amount previously paid. The claim asked repayment of the difference or any greater sum which might be found to be due. Upon the footing of this general claim a complete audit of the taxpayer's books was made and an overpayment in excess of the amount claimed was determined. After notification of this fact, but before rejection, the taxpayer amended the claim by making it specific and setting forth the supporting facts in detail. The amendment was held effective.[3]

In *United States* v. *Factors & Finance Co.,* 288 U. S. 89, additional assessments were made subsequent to payment of the amount shown to be due by the respondent's return. After paying part of the sum so assessed the taxpayer filed a claim for abatement of the unpaid balance. In connection with that claim the Commissioner ordered a full examination of the taxpayer's affairs, which was made. While this audit was in progress the taxpayer filed a claim for refund, couched in general terms, stating that, as there had been no final audit of its return, the purpose of the claim was to save the taxpayer's

---

[3] See also *George Moore Ice Cream Co.* v. *Rose,* 289 U. S. 373, 384.

rights under the statutes and permit the Commissioner to refund any excess paid beyond the amount found to be due. No statement of grounds for the claim was included. After the period of limitations had expired an amended claim was filed setting forth the grounds in detail and asking special assessment under § 210 of the Revenue Act of 1917. In the interval between the filing of the first and the amended claim the Commissioner had disposed of the claim for abatement but not of the claim for refund. After the receipt of the amendment the Commissioner considered the case on the merits and found that the taxpayer's invested capital could not be satisfactorily ascertained and that a special assessment should have been made under § 210 but he rejected the claim on the ground that the amendment was not timely. We held the amendment permissible. The opinion points out that the very generality of the original claim required that the Commissioner's audit go into the question of invested capital and that, therefore, the more specific amendment called attention to no new matter not covered by the investigation the Commissioner had to make in examining the claim as originally filed.

In each of these cases the claim failed to comply with a Treasury Regulation requiring that the grounds for the relief demanded should be set forth under oath and in detail. We held that while the Commissioner might promptly have rejected the claims for failure to comply with the regulation such compliance was a matter he could waive and, if he considered the merits, the claim was susceptible of any amendment which would not amount, under the rules of pleading in actions at law, to an alteration of the cause of action and would not require the Commissioner to make a new and different inquiry than that which he was called upon to make in order to consider the general grounds asserted in support of the claim as presented.

In *Bemis Bro. Bag Co.* v. *United States*, 289 U. S. 28, the taxpayer, in its original claim for refund, requested a special assessment under §§ 327 and 328 of the Revenue Act of 1918 and submitted a supporting statement as to its affairs wherein it sought relief on three distinct grounds specified in the sections in question and submitted facts and arguments in support of each of the grounds. Two of these grounds called the Commissioner's attention to the fact that the taxpayer's invested capital had been erroneously computed. After consideration of the claim the Commissioner notified the taxpayer that there was no basis for relief under § 327 (b), which furnished one of the grounds put forward by the taxpayer, but he apparently overlooked the circumstance that relief was also claimed under subdivisions (a) and (c) of that section. The taxpayer filed a protest and an amendment, which made no change of any importance in the facts and arguments already submitted, but asked that computation of the tax under § 328 be granted or, in the alternative, certain items the Commissioner had stricken from invested capital be restored. Since the original notice to the Commissioner was to the effect that valuable assets had been omitted from invested capital it would have been open to the taxpayer in the first instance to ask for relief under §§ 327 and 328 or, in the alternative, for a recomputation of its invested capital in accordance with the facts set forth in the original claim. The mere addition of the prayer for alternative relief was not a departure from the claim and did not amount to a new and untimely claim but constituted a proper amendment.

In *United States* v. *Henry Prentiss & Co.*, 288 U. S. 73, a situation materially differing from those involved in the foregoing cases was presented. There the taxpayer's claim for refund asserted that, owing to abnormal conditions affecting invested capital and income, there could be no fair computation of the tax by the appraisal of the

cash value of its property under § 326 of the Revenue
Act of 1918 and it should, therefore, have the benefit of
a special assessment under §§ 327 and 328, which provide
for computation of the tax in such cases without refer-
ence to the value of the invested capital and for deter-
mination of the tax according to the ratio which the
average tax of representative corporations engaged in a
similar business bears to their average net income. In re-
sponse to the claim the Commissioner advised the tax-
payer that he could not consider the propriety of a special
assessment until the statutory net income and invested
capital were determined and asked the taxpayer, there-
fore, to acquiesce in the net income and invested capital
shown in the Revenue Agent's report or submit any
exceptions it might have thereto. The taxpayer filed no
such exceptions but apparently acquiesced in the deter-
mination. The Commissioner then proceeded on the
basis of the facts he had ascertained and advised the tax-
payer the case was not one for special assessment and the
claim would be rejected. Thereafter, at an oral hearing
accorded by the Commissioner before final rejection of the
claim, the taxpayer presented an amendment in which it
set forth that, in ascertaining its invested capital, real
estate had been undervalued and certain intangibles had
been improperly excluded from the computation. This
court held that such an amendment, filed after the expira-
tion of the period of limitations, could not be considered,
first, because it totally changed the taxpayer's cause of
action, if the analogies of pleading were to be regarded,
and, second, because the original claim did not challenge
the Commissioner's determination of invested capital,
and an amendment which attacked this determination,
fundamental to the taxpayer's contention, was in effect a
new claim based upon a complete reversal of the
taxpayer's former position.

In all these cases the court found the analogies of plead-
ing helpful in deciding whether the claim was in such

form as to be subject to the proffered amendment at a time when a claim wholly new would have been barred; but the opinions point out that the analogy to pleading at law is not to be so slavishly followed as to ignore the necessities and realities of administrative procedure. Where a claim which the Commissioner could have rejected as too general, and as omitting to specify the matters needing investigation, has not misled him but has been the basis of an investigation which disclosed facts necessary to his action in making a refund, an amendment which merely makes more definite the matters already within his knowledge, or which, in the course of his investigation, he would naturally have ascertained, is permissible. On the other hand, a claim which demands relief upon one asserted fact situation, and asks an investigation of the elements appropriate to the requested relief, cannot be amended to discard that basis and invoke action requiring examination of other matters not germane to the first claim.

With these settled principles in mind we turn to the circumstances disclosed in the present case. The claim here was not general but specific. It did not assert generally that income, gross or net, had been overappraised or, generally, that the taxpayer was entitled to deductions not taken or granted. On the contrary, it pointed to two specific items of deduction which had not been taken and to which the taxpayer claimed to be entitled. It stated that during the taxable year the taxpayer's holdings of stock in two named corporations had become worthless, entailing a deductible loss of $995. While the claim added the phrase that the taxpayer claimed the sum named, or any greater sum which might be ascertained to be due, this did not call upon the Commissioner to make a complete reaudit of the taxpayer's return. The fact that he might have done so is immaterial. He could have acted on the claim, as apparently

he did, by investigating the affairs of the two corporations. It was ascertained that litigation was in process upon the outcome of which would depend a decision as to the alleged worthlessness of some of the shares in question. He, therefore, naturally postponed action on the claim until the termination of that litigation. While matters were in this posture, and after the period of limitation had expired, the respondent presented a so-called amendment of her claim having no relation whatever to the items set forth in the original claim, but dealing with a wholly distinct item of $36,750 reported as dividends received and asking that it be eliminated from that category and that the transaction be reclassified as capital gain upon a basis which would result in a reduction of tax by some $6,000. This is not a case where the Commissioner waived the regulation with respect to the particularity with which the grounds of the claim must be set forth. There was no need for him to do so. The claim was not general like that in the *Memphis Cotton Oil* case and the others following in its train. It was as specific as it could be made and pointed unerringly to the items the Commissioner must consider. It called for no general audit of the taxpayer's affairs and apparently none was made. An investigation of the items designated could not have the least relation to that attempted to be opened in the untimely amendment. The respondent urges that these considerations are of no legal significance, since the claim not only called for redress of a specified grievance but demanded general relief as well. She insists we have likened a claim for refund to an action for money had and received and have required the Commissioner to accept and act upon a bill of particulars furnished him before actual rejection of the claim although the period of limitation has expired. But, as we said in *United States* v. *Henry Prentiss & Co., supra,* p. 84, "This does not mean that a pleader who abandons

the common count and states the particular facts out of which his grievance has arisen retains unfettered freedom to change the statement at his pleasure."

Were it not for the presence in the original claim of the demand for refund of any other or greater sum which might be found due the taxpayer, we think it could not even be suggested that the claim was a general one for money had and received. Save for that clause the demand was of a specific amount based upon a specific transaction. Whether adjudication in strict analogy to the rules of pleading would permit the amendment we need not determine for the necessities and realities of administrative procedure preclude any such result. *United States* v. *Henry Prentiss & Co., supra,* p. 85. The very specification of the items of complaint would tend to confine the investigation to those items and there is no evidence that the examination was more extended.

Nor can the respondent gain advantage from the Commissioner's ruling communicated to his agent at Cleveland. There is no finding that, prior to the attempted amendment, the Commissioner knew the respondent was a stockholder of the Hanna Company or, if he did, that his attention was called to the fact that the reported receipt of dividends had reference to what the taxpayer received in respect of preferred stock of that company.

These views accord with the decisions of two circuit courts of appeal.[4] The respondent relies upon two decisions of the Court of Claims: *Youngstown Sheet & Tube Co.* v. *United States,* 7 F. Supp. 290, and *Con. P. Curran Printing Co.* v. *United States,* 15 F. Supp. 153. In the first a claim for additional depreciation depletion and amortization of an investment in mining properties was

---

[4] *Bryant Paper Co.* v. *Holden,* 63 F. (2d) 370; 65 F. (2d) 1012; *Swedish Iron & Steel Corp.* v. *Edwards,* 1 F. Supp. 335; affirmed 69 F. (2d) 1018; *United States* v. *Richards,* 79 F. (2d) 797; *New York Trust Co.* v. *United States,* 87 F. (2d) 889.

timely made. As a result of this claim a general audit of the taxpayer's affairs was had and resulted in the determination of a deficiency much greater than the amount of refund claimed. Upon appeal to the Board of Tax Appeals the deficiency was set aside and the Board found an overassessment due to failure to allow the claimed deduction and also deductions for depreciation of other assets. The Commissioner agreed that the overpayment found by the Board was correct. Thereupon the taxpayer filed, out of time, an amendment to claim additional specific deductions in accordance with the findings of the Board. The Commissioner allowed a refund of the item originally claimed but refused a refund of the others on the ground that the amendment sought to introduce new and distinct matters. In an action for recovery of the overpayment found by the Board, and claimed in the original and amended claims, the Court of Claims gave judgment for the taxpayer. We express no opinion as to whether the result may be sustained by the fact that while the original claim was pending the Commissioner was fully apprised of the items of deduction ultimately claimed in the amendment by two complete audits of the taxpayer's affairs and accounts. A similar situation is disclosed in the second case. The decisions were, however, put by the Court of Claims upon the same ground as in the instant case,—that a claim limited to a specified item might be amended out of time to seek a refund on account of other and unrelated items,—a view we hold untenable.

The judgment is

*Reversed.*