Whitaker, Judge,
delivered the opinion of the court:
Plaintiff sues for additional interest on a refund made it for an overpayment of taxes for 1941. The Commissioner of Internal Revenue refused to pay the interest claimed because he said that, in order to be entitled to the refund, it was necessary to carry back to the year 1941 a part of the 1943 excess profits credit, and that interest on a refund resulting from a carry-back of an excess profits credit is payable only from the date the claim for refund is filed, and, hence, plaintiff is not entitled to the additional interest claimed.
*733 Plaintiff says, if the Commissioner of Internal Revenue had allowed it to carry over the entire unused excess profits credit to which it was entitled for 1940, it would have been unnecessary to carry back any of its unused credit for 1943, and, since there is no limitation on the payment of interest on a refund occasioned by the carrying forward of an unused credit from a prior year, it is entitled to the additional interest claimed.
It is agreed that if plaintiff is entitled to carry forward its entire unused excess profits credit from 1940, it is entitled to the additional interest claimed.
Plaintiff is entitled to an additional carry-over from 1940 and to a carry-back from 1942 larger than that claimed in its claim for refund, if at all, because the Commissioner of Internal Revenue, in the course of his examination of plaintiff’s returns for 1942 and 1943, discovered that plaintiff was entitled to compute its depletion allowance on cost rather than March 1,1913, value.
When plaintiff made its income and excess profits tax returns for 1941 it claimed a carry-over of its unused excess profits credit from 1940. Then, when it developed that it had sustained a loss in 1942, it filed a claim for refund for 1941, asserting as its sole ground the right to carry back its unused excess profits credit for 1942.
In order to pass on this claim, plaintiff says it was necessary for the Commissioner of Internal Revenue to determine first, how much excess profits credit plaintiff was entitled to for
1942, and, second, how much of the credit it was necessary to carry back. To determine the first question, plaintiff’s net income for 1942 had to be recomputed. This involved á determination of the proper basis for computing depletion. Also, to determine the second question, the amount of plaintiff’s carry-over from 1940 had to be determined. This also involved a computation of its income for this year, which, in turn, involved the proper basis for computing its depletion.
So that plaintiff’s claim that it was entitled to a carry-back of unused excess profits credit for 1942 set in motion an investigation which naturally would have disclosed plaintiff’s right to a depletion allowance based on cost, instead of on March 1,1913, value.
*734 Before the Commissioner of Internal Revenue had acted on plaintiff’s claim for refund based on a carry-back of its unused excess profits credit for 1942, the Commissioner of Internal Revenue entered upon an investigation of plaintiff’s 1942 and 1943 tax liability. This investigation and the investigation necessary for action on the claim for refund were interrelated, because the claim for refund was grounded upon a claim of right to carry back to 1941 plaintiff’s unused excess profits credit for 1942, and the amount of this unused excess profits credit depended upon a proper computation of its income and invested capital for 1942.
In the course of the investigation of the 1942 tax liability, which, as stated, affected plaintiff’s right to the refund claimed, it was discovered that plaintiff was entitled to compute its depletion on cost rather than March 1, 1913, value, and this was allowed.
This, of course, affected plaintiff’s rights under its claim for refund. It meant that plaintiff had a larger unused excess profits credit for 1942, which it might carry back to 1941. Since, in order to determine how much of this credit plaintiff had to carry back to 1941 to extinguish its tax liability for that year, it was necessary to determine the amount plaintiff could carry over from 1940, the Commissioner of Internal Revenue had to recompute plaintiff’s tax liability for this year, using the new basis for computing depletion.
When plaintiff’s 1940 tax liability wras recomputed it was discovered that it was entitled to a carry-over to 1941 of an unused excess profits credit of some $220,000, instead of some $86,000, as the revenue agent had originally computed it. This made unnecessary the carry-back to 1941 of the entire unused excess profits credit for 1942, and, hence, it was unnecessary to carry back any credit from 1943.
Plaintiff says that its claim for refund of 1941 excess profits tax, based on a claim of right to deduct from its 1941 excess profits net income an unused excess profits credit from 1942 set in motion the investigations that led to the discovery of its right to compute its depletion on cost. Since this discovery was made within the statutory period, plaintiff says it was entitled to amend its claim of a carry-back *735 of its unused excess profits credit for 1942 by asserting the right to have it computed using cost as the basis of the depletion allowance. In order to so determine the credit to be carried back, it says it was necessary to recompute its unused excess profits carry-over from 1940, using cost as the basis of depletion.
We think plaintiff’s position is correct.
It is true plaintiff claimed a carry-back of a specific amount from 1942, but the amount claimed is unimportant. The crucial thing is that there was claimed a carry-back from 1942, which claim caused the audit, in the course of which it was discovered that plaintiff had the right to deduct depletion based on cost. This discovery was within the statutory period. The Commissioner of Internal Revenue being on notice of this right within the statutory period, plaintiff had the right, after the running of the statute, to file a formal claim, amending its former claim to a 1942 carry-back by claiming an amount based on the increased depletion allowance. The new basis for computing depletion would increase the carry-over from 1940 and the carry-back from 1942, both of which would extinguish the tax liability for 1941, and make unnecessary any carry-back from 1943. This being true, it is agreed that plaintiff is entitled to recover the additional interest it seeks.
We think this is in line with the holding of the Supreme Court in United States v. Memphis Cotton Oil Co., 288 U.S. 62; and United States v. Andrews, 302 U.S. 517, 523-524.
In the Memphis Cotton Oil Company case the claim filed by the plaintiff was a general one. Upon audit of it, it was discovered by the Commissioner of Internal Revenue that plaintiff was entitled to the repayment of an amount in excess of the amount claimed. The Supreme Court held that the taxpayer was entitled to amend its prior claim to set up its right based upon facts discovered by the Commissioner of Internal Revenue in the audit of its books.
The facts in the present case are somewhat more complicated, but, as in the Memphis Cotton Oil Company case, plaintiff’s claim here was based alone on its claim of right to carry back an unused excess profits credit from 1942. This claim led to the discovery of the facts which it set up in *736 its amendment to its former claim for refund. Under the authority of that decision, it would seem the amendment is permissible.
In United States v. Andrews, supra, the Supreme Court said that where a claim for refund “has not misled him [meaning the Commissioner of Internal Eevenue] but has been the basis of an investigation which disclosed facts necessary to his action in making a refund, an amendment which merely makes more definite the matters already within his knowledge, or which, in the course of his investigation, he would naturally have ascertained, is permissible.”
This case comes squarely within the rule stated by the Court. Plaintiff claimed a carry-back from 1942. It was “the basis of an investigation” by the Commissioner of Internal Eevenue. This investigation “disclosed facts necessary to his action in making a refund.” The amendment filed set out specifically “matters already within his [the Commissioner’s] knowledge.”
The facts in the Andrews case differ, however, from those in the case at bar. In the Andrews case a specific ground for relief was set up in the original refund claim, but the “so-called amendment of her claim [had] no relation whatever to the items set forth in the original claim.” Not so in the case at bar. The original claim asserted the right to carry back an unused excess profits credit from 1942. This was the subject of the amendment. In support of this claim, the amendment set out facts discovered in the course of the investigation of the former claim. Under such facts the Andrews opinion says the amendment is permissible.
The problem of when a claim for refund can be amended after the running of the statute has been presented to this court in a number of cases. Where the amendment is inconsistent with the former claim, or has injected new and unrelated matter, we have not allowed it, but where it is germane to the original claim and sets up matter discovered in the course of the investigation of the original one, we have allowed it. As an illustration of the latter class and one nearly comparable in its facts to the case at bar is Addressograph-Multigraph Corp. v. United States, 112 Ct. Cl. 201. There the taxpayer made no claim in its claim for refund *737 of a right to amortization of engineering expense, although it did claim depreciation on other items, but in the course of the investigation by the revenue agent it was concluded that the taxpayer was entitled to such a deduction. We concluded, “Under these circumstances we must conclude that the amendment merely made more definite the matters already within the knowledge of the Commissioner, which in the course of his investigation he actually did ascertain.”
See also St. Joseph Lead Co. v. United States, 190 F. Supp. 637.
We think plaintiff in this case was entitled to amend its original claim to make it conform to facts already in the knowledge of the Commissioner of Internal Kevenue, which showed that it was entitled to a greater unused excess profits carry-over from 1940 which affected the amount of its carry-back from 1942. Since the carry-over from 1940 and the carry-back from 1942 extinguishes plaintiff’s excess profits tax liability for 1941, it is unnecessary to carry back anything from 1943. If not, it is agreed plaintiff is entitled to the additional interest claimed.
It results that plaintiff is entitled to recover. Judgment for $17,954.15 * will be entered.
It is so ordered.
Faht, Circuit Judge, sitting by designation; Dttrpee, Judge; Laramore, Judge; and Jones, Chief Judge, concur.
FINDINGS OP PACT
The court, having considered the evidence, the report of Trial Commissioner Eobert F. McConnaughey, and the briefs and argument of counsel, makes findings of fact as follows:
1. On May 15, 1942, after a granted extension of time, the plaintiff, a New York corporation, filed its income tax return (Form 1120) and its excess profits tax return (Form 1121) for the calendar year 1941. Plaintiff had paid the *738 income tax liability of $271,981.51, reported on the return, on March. 14, 1942. It paid the excess profits tax liability of $194,662.46, reported on the return in two installments, $75,000 on March 16,1942, and $119,662.46 on May 17, 1942.
In its 1941 return, plaintiff reported excess profits tax income of $975,834.91, an excess profits tax credit of $494,280.20 and a carryover of unused 1940 credit of $84,441.14.
The amounts of invested capital reported for 1940 and 1941 were computed as follows:
Money and property paid in for; stock_ 131,0 lShl 8, 437,022. 95 $8,437, 022. 95
Less distributions made prior to taxable year not out of accumulated earnings and profits-1, 071,974.31 1,866, 061.86
Equity invested capital at beginning of taxable year_ 7, 365, 048. 64 6, 570, 961. 09
Less distributions not out of earnings ■and profits of tbe taxable year-226, 289. 72 222,288.92
Average equity invested capital-7,138, 758. 92 6,348,672.17
Keduction on account of inadmissible assets-1, 826.22 1, 812.13
Invested capital_ 7,136, 932.70 6,346, 860. 04
The excess profits tax return stated taxable excess profits tax income for 1940 at $465,144.15 and asserted a credit of $549,585.29 based upon the 1940 invested capital. The carryover of unused excess profits credit for 1940 was stated at $84,441.14.
2. In its excess profits tax return for 1941 and at all times thereafter, as well as in its excess profits tax returns for the years 1940, 1942, and 1943, the plaintiff computed its excess profits tax credit on the invested capital method, which was at all times accepted and followed by the Commissioner of Internal Revenue.
3. On September 25, 1943, the Internal Revenue Agent in Charge sent the plaintiff a copy of a revenue agent’s report dated August 24, 1943, covering an examination of plaintiff’s income tax and excess profits tax returns for 1940.- This report increased the plaintiff’s net income for *739 1940 from $464,987.67 (tbe amount shown by a previous revenue agent’s report dated December 20, 1941) to $465,-602.32 for income tax purposes and to $465,758.80 for excess profits tax purposes; determined a deficiency in income tax for 1940 of $147.51; and made no change with respect to plaintiff’s excess profits tax for 1940.
4. Also on September 25, 1943, the Internal Eevenue Agent in Charge sent to the plaintiff a copy of a revenue agent’s report dated August 24,1943, covering the examination of plaintiff’s income tax and excess profits tax returns for 1941.
(a)This report determined a deficiency of $20,587.59 in excess profits tax for 1941, arrived at as follows:
Adjusted excess profits net income based on invested capital credit method_$429,545.55
Total excess profits tax on $429,545.55- 215,250.05
Less previously assessed- 194, 662.46
Deficiency in excess profits tax- 20, 587.59
(b)The adjusted excess profits net income of $429,545.55 for 1941, used in the computation described in (a) above, was determined as follows:
Excess profits net income based on invested capital credit method- $1,018,454.97
Less:
Specific exemption_ $5, 000.00
Excess profits credit based on invested capital_ 497,853. 56
Excess profits credit carryover from 1940_ 86,055. 86
Total _ 588,909.42
Adjusted excess profits net income- 429,545. 55
(c)The excess profits credit of $497,853.56 for 1941, used in the computation described in (b) above, was determined as follows:
Invested capital_ $6, 397, 908. 04
Excess profits credit:
8 percent of $5,000,000.00_ $400, 000. 00
7 percent of $1,397,908.04_ 97, 853.56
Total. 497,853.66
*740 (d) The invested capital of $6,397,908.04 for 1941, used in the computation described in (c) above, was computed in detail in the report, and consists, in summary, of the following:
Money and property paid in for stock- $8, 468, 879.29
Less distributions made prior to the taxable year not .out of accumulated earnings and profits- 1, 866,061.86
Equity invested capital at beginning of taxable year- 6, 602,817.43
Less distributions not out of earnings and profits of the taxable year_ $203, 083.30
Average equity invested capital_ 6, 399, 734.13
Reduction on account of inadmissible assets_ 1, 826. 09
Invested capital_ 6, 397,908. 04
(e) The excess profits credit carryover to 1941 from 1940 of $86,055.86, used in the computation described in (b) above, was determined as follows:
Net income per revenue agent’s report of August 24, 1943, for the taxable year 1940_ $465, 602.32
Adjustments in revenue agent’s report of August 24, 1943, for the taxable year 1941_ , 156. 48
Excess profits net income for 1940 per RAR_ 465, 758. 80
Excess profits credit based on invested capital for 1940:
Money and property paid in for stock shown above- 8,468,879.29
Less distributions made prior to 1940 not out of earnings and profits_ 1,071,974.31
Equity invested capital December 31, 1939_ 7,396,904.98
Less distributions not out of earnings and profits for 1940_ 226, 289. 72
Average equity invested capital_ 7,170, 615.26
Reduction on account of inadmissible assets_ 1, 834. 37
Invested capital for 1940_ 7,168,780.89
Excess profits credit:
8 percent of $5,000,000.00_ $400,000.00
4 percent of $2,168,780.89_ 151,814.66
Total excess profits credit for 1940. 551, 814. 66
*741 Excess profits credit carryover: Excess profits net income for 1940_ 465,758. 80
Excess profits credit carryover to 1941- 86, 055. 86
(f) The revenue agent also determined a deficiency of $1,711 in income tax for 1941.
(g) On September 4, 1943, plaintiff filed a waiver of restriction, consenting to the assessment of the deficiencies in income tax and excess profits tax determined by the revenue agent.
(h) The income tax deficiency, together with interest of $159.33, was assessed and was satisfied by a credit of $1,083.35 on January 29, 1944, and payment of $786.98 on March 1, 1944.
(i) The excess profits tax deficiency of $20,587.59, together with interest of $1,917.18, a total of $22,504.77, was assessed and was paid by plaintiff on January 31,1944.
5. On December 1, 1943, the plaintiff filed a claim on Form 843 for the refund of $56,323.02 of excess profits tax with interest which it had paid for 1941.
In this refund claim, plaintiff claimed a carryback to 1941 of $102,405.50 unused excess profits credit for 1942 and an unused excess profits credit carryover from 1940 to 1941 of $86,055.86, both computed on the invested capital method.
In Schedule 1, attached to this claim, plaintiff reported adjusted excess profits net income of $429,545.55 for 1941 (which is the amount stated in paragraphs (a) and (b) of finding 4 as the amount determined in the revenue agent’s report dated August 24, 1943). As indicated in finding 4, in determining this adjusted excess profits net income, the revenue agent had allowed an unused excess profits credit carryover from 1940 of $86,055.86 instead of the $84,441.14 set forth in plaintiff’s excess profits tax return for 1941.
6. The computation of plaintiff’s invested capital in its excess profits tax returns, the revenue agent’s determination transmitted September 25, 1943, and the plaintiff’s claim for refund filed December 1, 1943, did not show any computation of depletion for invested capital purposes.
7. (a) Before January 1, 1944, plaintiff claimed and was allowed deductions from income for depletion determined on the basis of March 1,1913, value for the years 1923 through *742 1935 and on a percentage basis for the years 1936 through 1943. In its excess profits tax returns filed for the years 1940 through 1943, plaintiff had determined depletion for purposes of its equity invested capital on the basis of the March 1,1913, value.
(b) During an examination by a revenue agent of plaintiff’s tax returns and records for the years 1940 through 1943, a valuation report dated February 7, 1945, was made by an engineer revenue agent at the request of the revenue agent. This valuation report determined the amount of depletion on a percentage basis, allowable as deductions from income for those 2 years.
(c) Thereafter, in a supplemental valuation report dated June 2, 1945, the engineer revenue agent determined depletion on a cost basis instead of the March 1, 1913, value for purposes of plaintiff’s equity invested capital.
(d) Accordingly, in his report for 1942 and 1943 dated June 29,1945, the revenue agent determined deductions from income for depletion on the cost basis for the purposes of plaintiff’s equity invested capital. As a result, the revenue agent increased plaintiff’s equity invested capital for 1942 from $5,493,411.48 (which plaintiff had reported in its excess profits tax return for that year) to $9,398,519.20; and increased its equity invested capital for 1943 from $5,221,-415.90 (as reported in plaintiff’s excess profits tax return for that year) to $9,415,339.06.
On the basis of these increases in invested capital, the revenue agent, in his report of June 29, 1945, determined excess profits credits of $707,896.34 for 1942, and $709,073.73 for 1943. These amounts were arrived at as follows:
Money and property paid in for stock (per revenue agent’s report for 1942 1941)_ 19is $8,468,879.29 $8,468,879.29
Earnings and profits on “Oost Basis” for depletion:
As at December 31, 1941- 956,188.69 -
As at December 31, 1942_ _ 949,229.64
Reduction in invested capital in taxable year_ (23, 816. 78)
Reduction on account of inadmissibles (2, 732.00) (2, 769. 87)
*743 Invested capital_ 9,398,519.20 9,415,339.06
Excess profits credit based on invested capital_ 707,896.34 709,073. 73
(e) On June 28, 1945, plaintiff filed a waiver of restrictions on assessment and collection of deficiency in tax, thereby agreeing to the immediate assessment of the deficiencies in income and declared value excess profits taxes for 1942 and in income tax for 1943 disclosed in the revenue agent’s report of June 29, 1945. The report disclosed that no excess profits tax had been assessed for these 2 years and that none was due. The deficiencies in income tax were thereafter assessed and paid by plaintiff.
8. Plaintiff’s income tax and excess profits tax returns for 1941, 1942, and 1943 were under examination by revenue agents before and on March 15, 1945, and its excess profits tax liability for 1941 was under consideration by the Treasury Department and had not yet been finally determined.
9. (a) In connection with the preparation of the supplemental valuation report dated June 2, 1945, referred to in finding 7, the engineer revenue agent requested from the plaintiff, and agents or employees of the plaintiff assembled and furnished to the engineer revenue agent substantial quantities of information concerning the plaintiff and predecessor companies previously acquired by the plaintiff or consolidated within it. This information included typewritten and photo copies of numerous schedules, with supporting data, relevant to original cost and depletion of plaintiff’s properties on a cost basis for the years 1913 through 1934.
(b) The material furnished by plaintiff to the engineer revenue agent contained no express claim for a refund of taxes based on a carryover of unused excess profits credit from 1940 to 1941.
(c) The engineer revenue agent’s report indicates that the information furnished by the plaintiff was used in connection with the preparation of his report.
(d) Some and probably all of this information was furnished by the plaintiff to the defendant before May 15, 1945.
*744 (e) The change in the method of computing plaintiff’s invested capital adopted in the engineer revenue agent’s report of June 2, 1945, was discussed between the engineer revenue agent and plaintiff’s accountants before March 15, 1945, and the taxpayer agreed to the changes made by the revenue agent.
(f) The findings in the revenue agent’s report of June 29, 1945, were discussed with an officer of the plaintiff and with plaintiff’s accountants before the report was issued and they agreed with the findings.
10. (a) On July 7, 1945, the plaintiff filed another claim, on Form 843, for the ref mid of excess profits tax for 1941, with interest, in the amount of $215,250.05.
(b) In this refund claim, plaintiff, for the first time, expressly claimed an increase in its equity invested capital based specifically upon the restoration thereto of depletion previously allowed as deductions and the reduction of depletion computed on the cost of properties.
(c) In this claim for refund, the plaintiff claimed an excess profits credit carryover for 1940 to 1941 of $236,092.50, and a carryback of unused excess profits credit from 1942 of $214,915.71 of which $133,366.57 was not used for carry-back.
(d) The revised invested capital resulting from determining depletion on a cost basis, the excess profits tax credit for the years 1940, 1941, and 1942, and the carryover and carryback of unused credit stated by the plaintiff in this claim for refund, were as follows:

(e)Plaintiff also included in this claim for refund a revision of its excess profits tax for 1941 as follows:
Excess profits tax net income_ $1, 018,454.97
Specific exemption- 5,000.00
Excess profits credit carryover from year 1940, sliown above_ 236,092.50
*745 Excess profits credit for year 1941_ 695,813.33
Excess profits credit carryback from year 1942_ $214,915.71
Credit not availed of_ 133,366. 57
- $81, 549.14
Total _ 1,018,454.97
11. By a letter dated September 28, 1945, tbe Internal Revenue Agent in Charge forwarded to plaintiff a copy of a revenue agent’s report dated August 21,1945, covering bis further examination of its income tax and excess profits tax returns for 1941. In this report, the revenue agent reduced plaintiff’s taxable income for 1941 from $1,098,935.55 to $1,019,317.47, and determined an excess profits credit based upon the revision of invested capital for 1942 and 1943 in accordance with the findings made in the revenue agent’s report of June 29,1945, described in finding 7.
In this report, the revenue agent determined a credit of $695,813.46 for 1941, an unused credit carryback from 1942 of $213,249.02, and an unused credit carryover from 1940 of $236,092.54. The report proposed a deficiency in income tax for 1941 of $42,045.90 and an overassessment of excess profits tax of $215,250.05. This proposed deficiency in income tax was not assessed nor was the proposed overassessment of excess profits tax scheduled for refund by the Commissioner of Internal Revenue.
12. Under date of January 25, 1946, the revenue agent prepared another report for 1941 which was transmitted to plaintiff by letter dated February 27, 1946. In this report, the revenue agent determined an excess profits credit of $680,532.69 for 1941, a carryback of unused excess profits credit of $213,249.02 from 1942, and a carryover of unused excess profits credit of $220,814.42 from 1940.
In this report, the revenue agent stated that plaintiff had not filed a timely claim for refund in respect to several adjustments and therefore proposed a deficiency of $21,103.99 in income tax and an overassessment of $68,741.52 in excess profits tax. The proposed deficiency in income tax was not assessed nor was the proposed overassessment in excess profits tax scheduled for refund.
*746 13. On March. 14, 1946, plaintiff filed another claim, for refund of excess profits tax for 1941, and included as a basis a claim of a carryback of unused excess profits credit from 1943 to 1941.
14. After a conference held August 25, 1946, the Internal Revenue Agent in Charge, by letter dated August 30, 1946, sent to plaintiff a recomputation of income tax and excess profits tax for 1941, reflecting his conclusions reached as a result of the conference. The deficiency in income tax shown by this recomputation was not assessed nor was the overassessment of excess profits tax scheduled for refund by the Commissioner of Internal Revenue.
15. Under date of October 8, 1946, the revenue agent prepared another report for 1941, a copy of which was forwarded to plaintiff by letter dated November 25, 1946. In this report, the revenue agent computed the amount of plaintiff’s excess profits credit for 1941 as follows:
Credit for year 1941_ $680, 532. 69
Carryover unused credit from year 1940_ 86,055. 86
Carryback unused credit from year 1942_, 213,249. 02
Carryback of unused credit from year 1943- 115, 635.48
In this report, the revenue agent proposed a deficiency of $67,099.51 in income tax for 1941 and an overassessment of $215,250.05 of excess profits tax for 1941.
On February 6,1947, plaintiff filed a waiver of restrictions and consent to assessment of the deficiency of $67,099.51 in income tax and acceptance of the overassessment of $215,-250.05 in excess profits tax. By reason of the waiver, the deficiency in income tax, together with interest thereon of $12,674.23, was assessed on March 28, 1947, and was paid as of that date by credit of $79,773.74 from the overpayment of excess profits tax.
16.Early in 1948, plaintiff was informed of the determination of an overassessment of $215,250.05 of excess profits tax and $1,917.18 of interest paid for 1941 by the issuance of a certificate of overassessment which further informed plaintiff that $79,773.74 was credited against income tax and interest thereon for 1941, and that $137,393.49 of excess profits tax, together with interest thereon of $47,883.86, was refunded by a check accompanying the certificate.
*747 Thereafter, plaintiff was informed by letter dated February 8, 1949, that the determination of tax liability for 1941 before and after giving effect to carrybacks of unused excess profits credits from the years 1942 and 1948, was as follows:

The letter further informed plaintiff that interest on the overassessment was computed from the dates of overpayment or from the dates of filing claims for refund as follows:

17. On March 29, 1950, plaintiff filed a claim for additional interest of $23,602.38 on the overpayment of excess profits tax for 1941.
18. In response to a claim for refund of $34,198.18 of income tax for 1941 included among the claims filed by the plaintiff on March 29, 1950, the Internal Revenue Agent in Charge advised plaintiff of an overassessment in income tax for 1941 of $25,053.61 resulting from the allowance of a deduction of $80,818.08 for additional percentage depletion which reduced plaintiff’s taxable net income for 1941 to $1,019,317.47. During May 1952, the amount of this income tax overassessment, including interest of $4,732.30 paid by the plaintiff thereon, was refunded to plaintiff, together *748 with interest of $9,216.90 on the aggregate of the over-assessment and interest paid by the plaintiff. By letter dated June 12,1952, plaintiff was advised by registered mail of the rejection of the balance of its claim for refund.
19. For 1941, the plaintiff paid income taxes and interest thereon, and excess profits taxes and interest thereon, and had such taxes and interest refunded to it in the amounts and on the dates shown in Table 1.
TABLE 1

Taxes and interest 'paid by plaintiff and amounts thereof refunded for 19 41

20. On or after April 24, 1948, the defendant paid $47,883.86 to plaintiff as interest on a total of $217,167.23, refunded to the plaintiff as excess profits tax of $215,250.05 for 1941 and interest thereon of $1,917.18. Said interest of $47,883.86 was computed by the Commissioner of Internal Revenue as shown in Table 2.

*749 21. As finally determined by the Commissioner of Internal Revenue, plaintiff had no excess profits tax liability for the year 1941 and its excess profits tax credit computed upon the invested capital method resulted in (1) excess profits net income for 1941 of $1,019,654.97; (2) excess profits credit for 1941 of $680,532.69; and (3) unused excess profits credit for 1940 of $220,814.42, for 1942 of $213,249.02, and for 1943 of $443,280.28.
22. Of the excess profits tax of $215,250.05 overpaid by, and refunded to, the plaintiff for 1941, the respective amounts attributable to the unused excess profits credit carryover from 1940 to 1941 and the unused excess profits carrybacks to 1941 from 1942 and 1943, respectively, on the basis of a carryover from 1940 to 1941 (A) of $220,814.43 and (B) of $86,055.86, respectively, are as computed, and shown, in Table 3, which appears on page 750 and is incorporated as part of this finding.
23. On the alternative bases of the computations shown in Columns A and B, respectively, of Table 3 in finding 22, the interest to which plaintiff would be entitled on the $217,167.23, composed of excess profits tax ($215,250.05) and interest ($1,917.18) overpaid by and refunded to it for 1941, is as shown in Table 4, which appears on page 751 and is incorporated as part of this finding.

*750

*751

CONCLUSION* OF LAW
Upon the foregoing findings of fact, which are made a part of the judgment herein, the court concludes as a matter of law that plaintiff is entitled to recover, and it is therefore adjudged and ordered that plaintiff recover of and from the United States the sum of seventeen thousand nine hundred fifty-four dollars and fifteen cents ($17,954.15)*.

 On motion of defendant for amendment of the judgment entered herein, on the ground that prior to entry of judgment defendant had paid plaintiff $10,376.10 on account, in the matter in suit, it was ordered on February 7, 1962, that the judgment heretofore entered for $17,954.15 be vacated and in lieu thereof judgment be entered for plaintiff for $7,578.05. It was further ordered that defendant’s motion for amendment of the judgment of December 6,1961, in all other respects be denied.

For change in amount of judgment see footnote on p. 737, ante.